UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

VONDA KAY KENNEDY,

     Plaintiff,

v.                                     Case No. 5:13cv394/CJK

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY,

     Defendant.

_____/

## MEMORANDUM ORDER

This case is before the court pursuant to 42 U.S.C. § 405(g) for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Vonda Kay Kennedy's application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-34, and supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f. The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c) and FEDERAL RULE OF CIVIL PROCEDURE 73 for all proceedings in this case, including entry of final judgment. Upon review of the record before this court, I conclude that the findings of fact and determinations of the Commissioner are supported by substantial evidence. The decision of the Commissioner, therefore, will be affirmed.

ISSUES ON REVIEW

Plaintiff, who will be referred to as claimant, plaintiff, or by name, raises a number of issues on appeal: (1) whether the ALJ failed to give sufficient weight to the opinion of her treating physician, Dr. Valdee Harmon-Sheffield; (2) whether the ALJ failed to give sufficient weight to the opinion of Crystal Breland, a treating advanced registered nurse practitioner; (3) whether the ALJ failed to give sufficient weight to the opinion of Dr. Joseph Siano, an examining physician; and (4) whether the ALJ failed to properly assess plaintiff's mental RFC, as required by SSRs 96-8p and 85-15.

PROCEDURAL HISTORY

Claimant applied for DIB on November 20, 2007, and SSI on March 4, 2008, alleging disability beginning on September 5, 2007, due to "headaches, diabetes, gout, angina, enlarged heart, multiple sclerosis."  T. 121-21, 257-66, 294.[1]  Her applications initially were denied, and the denial was upheld on reconsideration.  T. 119-22, 145-50, 156-60.  Claimant filed a request for a hearing.  T. 161-62.  Her request was granted, and a hearing was conducted on April 15, 2010. T. 91-113.  On May 19, 2010, the administrative law judge ("ALJ") found claimant not disabled as defined by the Act.  T. 126-34.  Claimant requested review by the Appeals Council, which granted her request and remanded the case for further administrative proceedings on the issue of claimant's obesity.  T. 139-42.  On October 4, 2011, a second administrative hearing was held before a different ALJ at which plaintiff,

---

[1] The administrative record, as filed by the Commissioner, consists of eleven volumes (docs. 13-1 through 13-12) and has 647 consecutively numbered pages.  References to the record will be by "T.," for transcript, followed by the page number.

represented by counsel, and a vocational expert appeared and testified.  T. 42-90.  The ALJ issued an unfavorable decision on March 26, 2012.  T. 17-41.  The Appeals Council denied plaintiff's request for review on September 23, 2013.  T. 1-6.  The ALJ's decision thus became the final determination of the Commissioner.

## FINDINGS OF THE ALJ

In his written decision, the ALJ made a number of findings relative to the issues raised in this appeal:

- "[C]laimant has not engaged in substantial gainful activity since September 5, 2007, the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*)."  T. 22.

- "[C]laimant has the following severe medical impairments: gout, obesity, enlarged heart, angina, history of tobacco abuse, fibromyositis, and diabetes mellitus with neuropathy and restless leg syndrome (20 C.F.R. 404.1520(c) and 416.920(c))."  T. 22.

- "[C]laimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 405.1525, 404.1526, 416.920(d), 416.925 and 416.926)." T. 23.

- "[C]laimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except she can frequently[2] climb ramps and stairs, balance, stoop, kneel, crouch, and

---

[2] The context makes clear that this is a limitation of the full range of light work.

crawl; occasionally climb ladders, ropes, or scaffolds; and can tolerate up to frequent exposure to workplace hazards such as open machinery or unprotected heights." T. 26.

- "[C]laimant is able to perform past relevant work as a Cleaner Housekeeper, Fast Food Worker, Sewing Machine Operator, Companion, Cashier (Convenience Store), and Job Coach, both as those jobs are normally performed, and as performed by the claimant; and Cook, Institutional, as performed by the claimant. (20 C.F.R. 404.1565 and 416.965). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. 404.1565 and 416.965)." T. 34.

- "[C]laimant has not been under a disability, as defined in the Social Security Act, from September 5, 2007, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g))." T. 35.

FACT BACKGROUND AND MEDICAL HISTORY[3]

At the time the ALJ rendered his decision, plaintiff was forty-five years old, had a General Equivalency Diploma, and had completed trade school for industrial sewing. T. 49, 299. Plaintiff's previous work included cleaner/housekeeper and fast food worker, both of which are light, unskilled jobs; sewing machine operator performed at the sedentary level,  companion, and job coach, all of which are light, semi-skilled jobs; convenience store cashier, which is a light, unskilled job; and

---

[3] The recitation of medical and historical facts of this case, as set out below, is based on the court's independent review of the record. Although intended to be thorough and to provide an overview of the claimant's history of care and treatment, the synopsis of medical evidence will be supplemented as necessary in the Analysis section.

institutional cook, which is a skilled job performed at the medium level. T. 82-83, 316-32. Plaintiff lived at her grandmother's house, along with her children, brother, and nephew, and performed certain household chores, such as cleaning her room, making her bed, and folding her laundry. T. 50-51, 336-43. She also largely cared for her own personal needs, prepared herself meals using a microwave, rode in vehicles, shopped in stores, and spent time with her family. T. 336-43. During the pertinent period, plaintiff received medical care for a number of conditions, including shingles, gout, hypertension, diabetes, and fibromyalgia pain. T. 399-410, 454-64, 482-88, 506-14, 587-616. For the most part, her treatment was routine, with repeated references to her obesity and lack of compliance with doctors' orders, which directed that she take her medications, diet, exercise, and quit smoking. T. 399-410, 454-64, 482-88, 506-14, 587-616.

At the hearing, plaintiff testified that she suffers from headaches, shingles, gout, and pain and numbness in her hands and was diagnosed with multiple sclerosis. T. 52, 64, 67. Plaintiff claims to experience headaches daily, shingles outbreaks in her groin twice a year, which last two to three months, and gout flare ups three to four times a year that prevent her from placing her foot on the floor. T. 64-65, 68, 74. Plaintiff also experiences pain in her chest. T. 73. Although plaintiff has been prescribed numerous medications, she cannot afford them. T. 64-65. She acknowledged that Lortab helped her pain but testified that she is unable to take it due to hypertension. T. 73. Plaintiff takes Ibuprofen and Encet for pain and Neurontin for neuropathy. T. 73, 76. Neurontin, however, causes hallucinations and memory problems. T. 76. Claimant testified that she has used a cane since 2009 and, at the time of the hearing, used it every day. T. 65-66. Claimant also suffers from

anxiety and depression, which interfere with her ability to concentrate and for which she has been prescribed Buspar and Xanax.  T. 74-75, 78.  Plaintiff testified that she no longer is able to work because of pain in her hands, arms, shoulders, neck, back, legs, and feet, which limits her ability to sit and stand.  T. 64, 72.

When asked how long she can stand, plaintiff testified that she can stand for thirty minutes.  T. 69.  She can sit comfortably for an hour.  T. 69.  She has problems holding a book because of the numbness in her hands.  T. 75.  In fact, plaintiff testified that she drops things most days and cannot pick up a coin or piece of paper. T. 75-76.  Plaintiff rated her shingles and leg pain an eight on a ten-point scale.  T. 78.  She rated the pain from the neuropathy with her legs a ten.  T. 79.  She testified that she had been seeing Crystal Breland, an advanced registered nurse practitioner, twice a month for the past year and had seen Dr. Valdee Harmon-Sheffield every Saturday since February 2011 for hypertension and pain.  T. 70-72.  Plaintiff testified that her daughter cooks and cleans the home and that she spends twenty hours a day lying down.  T. 78.

On September 2, 2008, claimant attended a consultative examination with psychologist George L. Horvat, Ph.D., at the state's request.  T. 414-18.  Plaintiff reported being treated for anxiety since 2006 and taking "nerve pills" but denied a history of inpatient treatment and suicide attempts.  T. 414-15.  Dr. Horvat diagnosed generalized anxiety disorder and pain disorder and assigned plaintiff a GAF score of 65.[4]  T. 416.  According to Dr. Horvat, there were no psychological impediments to

---

[4] The GAF rating has two components: (1) symptom severity and (2) social and occupational functioning.  The GAF is within a particular range if either the symptom severity or the social and occupational level of functioning falls within the range.  When the individual's symptom severity and functioning level are discordant, the GAF rating reflects the worse of the two.  The American

plaintiff working.  T. 416-17.  Less than two weeks later, Dr. Samuel Ward, a general practitioner, evaluated plaintiff at the state agency's request.  T. 419-25.  Plaintiff complained of "feet and all over body pain," as well as gout and shingles.  T. 422. On September 24, 2008, Dr. David Guttman, a state agency physician, reviewed the record and determined that, despite her various impairments, plaintiff retained the RFC to lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk and sit for about six hours in an eight-hour workday; perform unlimited pushing and/or pulling; occasionally climb ladders, ropes, or scaffolds; frequently climb ramps or stairs; and frequently balance, stoop, kneel, crouch, and crawl.  T. 427-28.    Dr. Guttman  found  no  manipulative,  visual,  communicative,  or environmental limitations.  T. 429-30.  A state agency psychologist, Thomas Conger, Ph.D., reviewed the record on October 9, 2008, to assess the severity of plaintiff's anxiety disorder.  T. 434-47.  According to Dr. Conger, plaintiff's anxiety disorder did not restrict her ability to perform activities of daily living; mildly limited her ability  to  maintain  social  functioning;  mildly  limited  her  ability  to  maintain

---

Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV-TR") 34 (4th ed., text rev., 2000).  A GAF between 51 and 60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning;" a GAF between 61 and 70 indicates "mild" symptoms or "some difficulty in social, occupational or school functioning," but "generally functioning pretty well;" a GAF score between 71 and 80 indicates transient and expectable reactions to psychosocial stressors and no more than an slight impairment in social, occupational, or school functioning; a GAF score between 81 and 90 indicates no or minimal symptoms and good functioning in all areas.  *Id.*  The most recent edition of the Diagnostic and Statistical Manual no longer recommends use of the GAF scale, acknowledging that "[i]t was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity and questionable psychometrics in routine practice." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013).

concentration, persistence, or pace; and caused no episodes of decompensation of extended duration.  T. 444.  Dr. Conger concluded that plaintiff's anxiety disorder was not severe.  T. 434.

Crystal Breland, an advanced registered nurse practitioner who treated plaintiff, completed a Physical Capacities Evaluation and Clinical Assessment of Pain form on March 31, 2010.  T. 515-17.  On the Physical Capacities Evaluation form, Ms. Breland indicated that plaintiff could lift and/or carry ten pounds occasionally and five pounds frequently; sit and stand or walk for two hours each during an eight-hour work day; rarely engage in pushing and pulling movement, climbing and balancing, and reaching; rarely be exposed to environmental problems; occasionally bend and/or stoop and operate motor vehicles; and frequently engage in gross and fine manipulation.  T. 516.  Ms. Breland opined that claimant would be absent from work as a result of her impairments and treatment more than four days per month.  T. 516.  When asked to explain the degree and basis for the restriction she imposed, Breland cited severe hypertension, severe neuropathy, insulin dependent diabetes, and chronic severe fatigue.  T. 516.  On the Clinical Assessment of Pain form, Ms. Breland indicated that plaintiff experienced pain "to such an extent as to be distracting to adequate performance of daily activities or work."  T. 517.  Breland also indicated that physical activity "[g]reatly increased pain . . . to such a degree as to cause distraction from tasks or total abandonment of task" and that drug side effects could "be expected to be severe and to limit effectiveness due to distraction, in attention [sic], drowsiness, etc."  T. 517.

Dr. Valdee Harmon-Sheffield, plaintiff's treating physician, completed a Physical Capacities Evaluation on September 20, 2011, in which she opined that

claimant could lift and/or carry ten pounds occasionally and five pounds frequently, sit for three hours and stand and/or walk for two hours during an eight-hour workday, frequently engage in pushing and pulling movement, gross and fine manipulation, and bending and/or stooping movements; frequently operate a motor vehicle; occasionally climb and balance and reach; and never be exposed to environmental problems or work with or around hazardous machinery.  T. 618.  Dr. Harmon-Sheffield indicated that plaintiff would be absent from work three days per month due to her impairments or treatment.  T. 618.  When asked to explain and describe the degree and basis for the restriction imposed, Dr. Harmon-Sheffield stated that plaintiff was "on medications that are sedating and has pain in shoulder and arm extremities."  T. 618.  In addition to the Physical Capacities Evaluation, Dr. Harmon-Sheffield completed a Clinical Assessment of Pain form identical to the one completed by Breland.  T. 619.

Joseph Siano, D.O., examined plaintiff at the state's request on November 19, 2011.  T. 635-47.  Plaintiff identified to Dr. Siano twelve physical and mental conditions she considered disabling, including headaches, diabetes, gout, angina, enlarged heart, multiple sclerosis, back and hip pain, hypertension, neuropathy, obesity, GERD, and anxiety.  T. 635-36.  Dr. Siano concluded plaintiff had no functional limitations from the headaches, gout, angina, enlarged heart, hypertension, neuropathy, GERD, and anxiety and only mild functional limitations from her uncontrolled diabetes, multiple sclerosis, back and hip pain, and obesity.  T. 639-40.  Dr. Siano also noted plaintiff's history of noncompliance.  T. 640.  Nevertheless, in a Medical Source Statement of Ability to Do Work-Related Activities (Physical), Dr. Siano indicated that plaintiff had work-preclusive restrictions, including an inability

to lift, carry, or perform postural activities or sit, stand, or walk more than fifteen minutes at a time for a total of six hours during an eight-hour workday.  T. 642-47.

At the hearing, the vocational expert testified that a person of plaintiff's age, education, and work experience, who could perform light work except only frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; occasionally climb ladders, ropes, or scaffolds; and tolerate up to frequent exposure to workplace hazards such as open machinery or unprotected heights, could perform all of plaintiff's previous jobs.  T. 85-86.   The expert then opined that plaintiff's jobs could be performed if the hypothetical person were limited to frequent bilateral handling and the jobs of companion, sewing machine operator, and cleaner/housekeeper could be performed with the additional restriction of simple, routine work involving a specific vocational preparation level of only one or two.  T. 86-87.  The vocational expert further testified that the jobs of companion and sewing machine operator could be performed by a person with plaintiff's background who was limited to sedentary work involving lifting ten pounds occasionally and five pounds frequently, sitting for up to three hours at a time, and standing and walking for a total of two hours during an eight-hour workday; an option to alternate between sitting and standing after a three-hour interval but without the option of leaving the work station; frequent bilateral handling and fingering; occasional reaching in all directions; occasional climbing of stairs, ramps, ladders, ropes, and scaffolds; occasional balancing; and no exposure to pulmonary irritants or workplace hazards.  T. 87-88.

## STANDARD OF REVIEW

A federal court reviews a Social Security disability case to determine whether the Commissioner's decision is supported by substantial evidence and whether the

ALJ applied the correct legal standards. *See Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."). Substantial evidence is "'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). With reference to other standards of review, the Eleventh Circuit has said that "'[s]ubstantial evidence is more than a scintilla . . . .'" *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 62 (11th Cir. 2010) (*quoting Lewis*, 125 F.3d at1439). Although the ALJ's decision need not be supported by a preponderance of the evidence, "it cannot stand with a 'mere scintilla' of support." *See Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. *See Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner] . . . .'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). A reviewing court also may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *See Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of

the record." *See Flynn v. Heckler*, 768 F.2d. 1273, 1273 (11th Cir. 1985); *see also Getty ex rel. Shea v. Astrue*, No. 2:10–cv–725–FtM–29SPC, 2011 WL 4836220 (M.D. Fla. Oct. 12, 2011); *Salisbury v. Astrue*, No. 8:09-cv-2334-T-17TGW, 2011 WL 861785 (M.D. Fla. Feb. 28, 2011).[5]

The Social Security Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff not only is unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(g), the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, she is not disabled.

2. If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3. If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is

---

[5] The Eleventh Circuit not only speaks of an independent review of the administrative record, but it also reminds us that it conducts a *de novo* review of the district court's decision on whether substantial evidence supports the ALJ's decision. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

presumed disabled without further inquiry.

4.  If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.[6]

5.  Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

"[R]esidual functional capacity is the most [claimant] can still do despite [claimant's] limitations."[7]  20 C.F.R. § 404.1545(1).  The ALJ establishes residual functional capacity, utilizing the impairments identified at step two, by interpretation

---

[6] Claimant bears the burden of establishing a severe impairment that keeps her from performing his past work.  *See Chester v. Bowen*, 792 F. 2d 129, 131 (11th Cir.  1986).

[7] In addition to this rather terse definition of residual functional capacity, the Regulations describe how the Commissioner makes the assessment:

> (3) Evidence we use to assess your residual functional capacity.  We will assess your residual functional capacity based on all of the relevant medical and other evidence.  In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity.  (See § 404.1512(c).)  However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources.  (See §§ 404.1512(d) through (f).)  We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations.  (See § 404.1513.)  We will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons.  (See paragraph (e) of this section and § 404.1529.)[.]

20 C.F.R. § 404.1545(a)(3).

Case No. 5:13cv394/CJK

of (1) the medical evidence, and (2) the claimant's subjective complaints (generally complaints of pain).  Residual functional capacity is then used by the ALJ to make the ultimate vocational determination required by step five.[8]  Often, both the medical evidence and the accuracy of a claimant's subjective complaints are subject to a degree of conflict and that conflict leads, as in this case, to the points raised on judicial review by the disappointed claimant.

## ANALYSIS

As set forth above, claimant argues that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to give sufficient weight to the opinions of her medical providers and an examining physician and failed to properly assess her RFC.  With regard to her first assignment of error – that the ALJ failed to give sufficient weight to the opinions of Dr. Harmon-Sheffield – plaintiff argues that the ALJ should have given great weight to Dr. Harmon-Sheffield's opinions and failed to provide sufficient rationale when he declined to do so.  Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Broughton v. Heckler*, 776 F.2d 960, 960-61 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986).  "Good cause" exists when:  (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory

---

[8] "Before we go from step three to step four, we assess your residual functional capacity. (See paragraph (e) of this section.)  We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."  20 C.F.R. § 404.1520(a)(4).

or inconsistent with the doctor's own medical records. *Phillips,* 357 F.3d at 1241; *see also Lewis*, 125 F.3d at 1440 (citing cases). If a treating physician's opinion as to the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ is to give it controlling weight. *See* 20 C.F.R. § 404.1527(c)(2). Where a treating physician has merely made conclusory statements, however, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen,* 816 F.2d 578, 582 (11th Cir. 1987).

The law concerning conclusory statements is particularly applied where a doctor, even one who has treated the claimant, expresses opinions on a preprinted or "check-off" form. Such opinion evidence will not bind the Commissioner. Indeed, courts have found that such preprinted forms do not provide persuasive evidence of the validity of the opinions expressed therein. *See Hammersley v. Astrue*, No. 5:08-cv-245-Oc-10GRJ, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) ("Check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions." (*citing Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993))). Although such forms are admissible, "they are entitled to little weight and do not constitute 'substantial evidence' on the record as a whole." *O'Leary v. Schweiker*, 710 F. 2d 1334, 1341 (8th Cir. 1983).

The ALJ gave "little weight" to Dr. Harmon-Sheffield's opinions because he found them unsupported by the treatment notes. T. 33. The undersigned agrees that

Dr. Harmon-Sheffield's opinions find little support in his treatment notes, which are fairly unremarkable.  The opinions are also conclusory in nature and expressed on pre-printed, check-off forms and thus are entitled to little weight for that reason alone. Accordingly, the undersigned finds no error in the ALJ's decision to afford little weight to the opinions of Dr. Harmon-Sheffield.

In support of her second assignment of error – that the ALJ erred by failing to give sufficient weight to the opinions of advanced registered nurse practitioner Crystal Breland – plaintiff makes the same argument she made regarding the opinions of Dr. Harmon-Sheffield.  The ALJ gave "little weight" to the opinions of Ms. Breland  because he found them "inconsistent with the other evidence in the record." T. 31.  The ALJ also found that the "treatment notes from Ms. Breland's clinic, the Washington County Health Department, fail[ed] to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant in fact were disabled." T. 31.  The undersigned agrees that Ms. Breland's opinions were entitled to little weight.  Not only are they inconsistent with and unsupported by other evidence in the record, but like Dr. Harmon-Sheffield's opinions, they also were conclusory in nature and expressed on pre-printed check-off forms.  Moreover, as a nurse practitioner, Ms. Breland is not an "acceptable medical source" under the applicable regulations and her opinions "would only be afforded weight to the extent [they were] supported by the factors listed in 20 C.F.R. §§ 404.1527(c), and [were] consistent with the evidence of record." *Busby v. Colvin*, No. 1:13cv215/MP/GRJ, 2015 WL 333068, at *7 (N.D. Fla. Jan. 23, 2015); *see also* 20 C.F.R. §§ 404.1502, 404.1513(a), (d)(1); 416.902, 416.913(a)(d)(1); SSR 06-03p.  The ALJ thus did not

err in assigning little weight to Ms. Breland's opinions.[9]

Turning to plaintiff's third assignment of error – that the ALJ erred by failing to give sufficient weight to the opinions of Dr. Joseph Siano – plaintiff argues that the ALJ should have given great weight to those opinions of Dr. Siano favored by plaintiff and failed to sufficiently explain his rationale for not doing so. The ALJ gave "no weight" to Dr. Siano's opinions, finding his examination "internally inconsistent to a high degree" and noting the "narrative indicates the claimant has little limitation related to her physical impairments, while the accompanying checklist contains completely inconsistent limitations." T. 33. Review of the record does indeed confirm that Dr. Siano's opinions contain significant inconsistencies and lack support in the medical records; thus, the ALJ reasonably declined to rely on them.

Plaintiff's fourth assignment of error – that the ALJ failed to properly assess her mental RFC – likewise lacks merit. In support of her position, plaintiff argues that the ALJ erroneously failed to express her pain in terms of work-related functions. Contrary to plaintiff's assertions, however, the ALJ plainly considered plaintiff's alleged mental impairment and found no significant mental work-related limitations. T. 23-25. As the ALJ noted, plaintiff received no specialized mental health treatment during the relevant period and had no history of inpatient psychiatric admissions or suicide attempts. T. 414-15. Rather, plaintiff's psychiatric treatment consisted of

---

[9] Plaintiff cites *Jackson v. Astrue*, Case No. 8:06-CV-1631T26TBM, 2007 WL 2428815, at *5 (M.D. Fla. Aug. 17, 2007), for the proposition that an ALJ errs when failing to state with particularity the weight accorded opinions of treating practitioners in determining a claimant's RFC. That case is not controlling and is distinguishable because, there, the ALJ "did not discount" either of the opinions at issue. *Id.* Here, the ALJ specifically considered – and expressly rejected – the opinions at issue, explaining the weight assigned he assigned to them and the reasons for his decision in that regard.

medications prescribed by her primary care physician.  T. 414-15.  Plaintiff's examinations revealed no psychiatric impediments to working, as plaintiff was consistently alert, oriented, cooperative, had a normal affect and speech, and was able to answer questions and follow commands, although she was non-compliant with directives regarding her medication.  T. 399, 401, 403-04, 407-08, 422, 454, 458-59, 463, 483, 485, 488, 507, 509-10, 513, 588, 590-91, 593-95, 598-602, 606, 609, 612, 638-39.  Plaintiff had adequate grooming and hygiene, maintained normal eye contact and responsive facial expressions, had "distractible" attention, a normal memory, and normal orientation.  T. 414-16.  She had anxiety that interfered with her concentration, but she exhibited a cooperative attitude, full range and appropriate affect, normal speech flow, appropriate thought content, average intelligence, average fund of knowledge, concrete abstraction, commonsense judgment, normal social judgment, and no signs of delusions.  T. 415-16.  Dr. Horvat, an examining psychologist, assigned plaintiff a GAF of 65, indicating only mild symptoms and/or functional limitations, and opined that she had no mental work-related restrictions.  T. 416-17.  Reviewing state agency mental health expert Dr. Conger opined that plaintiff's anxiety disorder did not restrict her ability to perform activities of daily living; mildly limited her ability to maintain social functioning; mildly limited her ability to maintain concentration, persistence, or pace; and caused no episodes of decompensation of extended duration.  T. 444.  According to Dr. Conger, plaintiff's anxiety disorder was not severe.  T. 434.  In short, the ALJ did consider plaintiff's mental condition and found a lack of reliable evidence that plaintiff had any

significant mental work-related restrictions, whether caused by pain or otherwise.[10] Even if the ALJ had failed to consider plaintiff's mental restrictions, there is no indication that the ALJ's decision would have been different had he considered them. Indeed, the ALJ found plaintiff capable of only unskilled work, which imposes little mental demand.

**ACCORDINGLY, it is ORDERED:**

1.    The decision of the Commissioner is AFFIRMED and plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income are DENIED.

2.  The clerk is directed to close the file.

**DONE AND ORDERED** this 5th day of March, 2015.

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[10] To the extent that Dr. Harmon-Sheffield or Ms. Breland found otherwise, the ALJ acted within his discretion in refusing to credit their findings.

Case No. 5:13cv394/CJK